IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CV-324-FL

| | |
|---|---|
| LESLIE D. WILKINS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Leslie Wilkins ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant filed her first application for a period of disability and DIB on May 13, 2003, alleging disability beginning September 24, 2001. (R. 59). After denial of her first application initially and upon reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on April 14, 2005. *Id.* On August 22, 2006, the ALJ issued a decision denying Claimant's request

for benefits and Claimant did not seek an appeal. (R. 59-71).

Claimant protectively filed a second application for a period of disability and DIB on April 26, 2007, alleging disability beginning August 23, 2006. (R. 138-40, 143). Her claim was denied initially and upon reconsideration. (R. 72-73). A video-teleconference hearing before the ALJ was held on February 11, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 28-55). On February 26, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 16-27). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 14-15), and submitted additional evidence as part of her request (R. 329-44). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on April 4, 2011. (R. 7-11). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial

evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required

to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to adequately develop the record; (2) failure to adequately consider the medical evidence dated after the date last insured ("DLI"); and (3) improper evaluation of examining and treating physician's opinions. Pl.'s Mem. at 7-12.

## IV. FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 21). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease; post traumatic stress disorder; and depression. (R. 22). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, moderate difficulties with social functioning and concentration, persistence and pace, and with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] requiring an at will sit/stand option and simple, routine, repetitive

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are

4

tasks with only occasional interaction with the public and co-workers. (R. 23). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 23-25). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a police officer. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26-27).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 40 years old and unemployed. (R. 34). Claimant is a high school graduate and was last employed as a police officer for approximately ten years before being assaulted and injured in 2001 while working as a police officer. (R. 34, 37). Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time.[2] These medical conditions include nerve damage in the cervical and lumbar spine, memory loss, anxiety, insomnia, fibromyalgia, and post-traumatic stress disorder. Claimant experiences shooting and tingling pain, and numbness as a result of her nerve damage. (R. 38). Her pain travels from her neck down into her arms, fingers, legs and feet. *Id.* Claimant underwent a cervical fusion and lumbar spinal surgery, but she continues to experience pain everyday. (R. 38-39). Claimant takes pain medication daily, but it does not completely

---

required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

[2] Claimant focused her testimony on her medical conditions and symptoms from August 2006 through December 2007, the relevant period.

alleviate the pain and numbness. (R. 39). Claimant estimates her pain ranges from moderate to severe. *Id.* In addition, Claimant also experiences continuous muscle spasms for which she takes nerve and muscle spasm medication and she recently began using a lumbar traction device for her lower spine. (R. 41). Claimant can sit in a chair for approximately 40 minutes and stand in one place for approximately five minutes before she begins experiencing pain in her neck and low back. (R. 42). Claimant can walk approximately two blocks before needing to stop and rest due to pain in her back and Claimant testified her claw foot is also painful when walking. (R. 42-43). Claimant estimates that she can lift and carry approximately 10 pounds and can probably complete a job where she sits, stands, walks and lifts 10 pounds were it not for her emotional problems. (R. 43).

Claimant also testified that she has difficulty with memory and concentration. Specifically, Claimant testified that she has difficulty with simple addition and remembering conversations with other people and may lose track of where she is in completing tasks, such as leaving the water running in the sink. (R. 39-40). Claimant is able to read, but forgets what she has read a couple days later and her reading comprehension is deteriorated. (R. 40). When cooking a meal by recipe, she must constantly refer back to the directions. *Id.* Claimant returned to school in Fall 2009, but her memory and concentration difficulties negatively impacted her success in school. *Id.* Claimant testified that she experiences depression and tender points in her body from her fibromyalgia and is unable to lift her arms overhead for an extended period of time. *Id.* Thinking back to 2006 and 2007, Claimant was very depressed, feeling tired and hopeless and not wanting to socialize. (R. 41). Claimant's return to school in 2009 was an effort to be a part of society again and not feel isolated, which Claimant believes has improved her depression a little bit. *Id.*

Claimant's daughter completes most of the household tasks like cooking, cleaning, laundry,

and grocery shopping, but Claimant is able to help with the tasks. (R. 44). Claimant can clean counter surfaces, but cannot clean if it involves bending over. *Id.* Additionally, Claimant is able to dress, bathe, shower, fix her hair, and take care of all her personal hygiene needs. (R. 45). Claimant has a valid driver's license and drives two to three times per week, usually to the grocery store with her daughter or on other errands. *Id.* Claimant enjoys designing and potting small plants. (R. 46). She is able to pot plants sitting at a table inside, but cannot go outside to pot plants because she has difficulty bending and stooping. *Id.*

### III. Vocational Expert's Testimony at the Administrative Hearing

Alger Brown testified as a VE at the administrative hearing. (R. 47-53). After the VE's testimony regarding Claimant's past work experience (R. 48), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ stated that the hypothetical individual could not perform Claimant's past work as a police officer, but asked whether the individual could perform other jobs assuming the individual has the physical capacity to perform sedentary work involving simple, routine and repetitive tasks with nonexertional limitations that include a sit/stand option and no working in environments that require rapid-pace work or production quotas. (R. 48). The VE responded that the individual could perform the jobs of quality control examiner (DOT # 726.684-050), administrative support (DOT # 249.587-014) and charge account clerk (DOT # 205.367-014). (R. 49). The ALJ next asked the VE whether the same hypothetical individual having the additional limitation of only occasional interaction with the general public and coworkers could perform the three jobs already listed. *Id.* The VE responded that the hypothetical individual would not be able to perform the charge account clerk position, but would be able to perform the additional positions

7

of miscellaneous handwork (DOT # 715.684-010) and samplers, weighers, and graders (DOT # 539.485-010). (R. 49-50). The ALJ next added the restriction that the individual could not maintain simple, repetitive tasks. (R. 50). The VE stated that an individual unable to complete said tasks could not maintain competitive employment. *Id.*

Claimant's counsel next questioned the VE and asked the VE to give examples of the type of work that miscellaneous handwork includes. (R. 51). The VE listed the positions of polisher, bench hand, small parts, and loaders. *Id.* Claimant's counsel next asked whether an individual unable to squat and rise would be able to the perform jobs listed in the ALJ's second hypothetical. *Id.* The VE responded that the jobs listed do not typically require squatting. *Id.* Claimant's counsel next asked whether a limitation on overhead reaching would preclude these jobs, to which the VE responded in the negative. *Id.* Claimant's counsel last asked whether an individual limited to sitting, standing and walking only one hour and requiring constant movement would be able to perform the jobs listed. (R. 52). The VE responded that either of the limitations listed by Claimant's counsel would preclude work. *Id.*

## V. DISCUSSION

### I. The ALJ's Development of the Record

Claimant contends the ALJ failed to adequately develop the administrative record by not requesting additional records from The Rehab Center, the Veterans Affairs ("VA") medical center and Coastal Neurosurgical Associates and Spine Center. Pl.'s Mem. at 6, 9-10. Claimant supports her contention with an attached declaration by Julie Eastman, counsel's legal assistant, who attests to the existence of numerous other records from these treatment centers. Decl. [DE-17-1]; Pl.'s Mem. at 6. This court disagrees.

8

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Although a claimant has a duty to diligently supply medical records to the SSA documenting the claimant's impairments and limitations, the ALJ bears the responsibility of developing the claimant's "complete medical history." 20 C.F.R. § 404.1740(b); *see Smith v. Barnhart*, 395 F. Supp. 2d 298, 302 (E.D.N.C. 2005). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "There is scant authority in this circuit to provide this court guidance in determining when the administrative record is so 'inadequate' as to trigger the ALJ's heightened duty to inquire into those deficiencies and, if necessary, supplement the record before rendering a decision." *Smith*, 395 F. Supp. 2d at 302. However, the decision of an ALJ will not be overturned for failure to fully and fairly develop the record unless "such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also Marsh*, 632 F.2d at 300 (noting that evidentiary gaps that result in unfairness or clear prejudice require a remand); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Claimant's argument concerning missing or incomplete records from the various medical

offices specifically relates to Claimant's fibromyalgia. Pl.'s Mem. at 9-10. The crux of Claimant's argument is that the ALJ needed to further develop the record to obtain records affirmatively stating a fibromyalgia diagnosis during Claimant's insured period. The ALJ acknowledged in her opinion the trigger point test in February 2003, but stated no diagnosis of fibromyalgia was made prior to the expiration of Claimant's insured status and, therefore, fibromyalgia was not a medically determinable impairment. (R. 22). Claimant, maintaining an ambiguity exists requiring additional records, emphasizes her testimony at the administrative hearing that she was diagnosed with fibromyalgia in 2003 with a trigger point test and the March 2008 VA examination record from Dr. Soliman, a primary care physician, indicating the presence of fibromyalgia. (R. 36, 301).

Here, even assuming, *arguendo*, that the medical record is incomplete, Claimant has failed to demonstrate that the inclusion of further documentation would change the outcome of the case. *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). The ALJ did not include Claimant's alleged fibromyalgia as a severe impairment, pointing to the absence of a diagnosis during the insured period. However, Claimant has failed to show that the inclusion of additional records would provide a definitive diagnosis of fibromyalgia, much less provide other evidence of how Claimant's fibromyalgia condition impacts her functional abilities. Claimant's attached declaration indicates that additional records have been obtained by Claimant's counsel, but there is no proffer of what these subsequent medical records would indicate, nor have the records been attached. *See Zook v. Comm'r of Soc. Sec.*, No. 2:09-CV-109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010) ("Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision.") (quoting

*Ripely v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995)). Additionally, Claimant does not specifically argue that these additional records, which Claimant contends the ALJ ought to have obtained, contain evidence that would affect the ALJ's decision. The undersigned notes that the prior ALJ decision in August 2006 indicates that there was no record with a fibromyalgia diagnosis (R. 62), and Claimant has failed to supply such record in the instant case filed years later, yet is now requesting that this court remand for the ALJ's failure to adequately develop the record. Claimant's request does not square with the opportunities Claimant has had to supply the evidence now claimed necessary. *See Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."). Accordingly, with no indication that additional medical records from these medical providers would influence the ALJ's disability determination, the court finds that the ALJ did not err by failing to obtain additional records.

## II.   The ALJ's Consideration of Evidence Dating After the Claimant's DLI

Claimant contends the ALJ failed to consider medical evidence after her date last insured, specifically the VA examination notes for primary care visits on March 7, 2008, and April 1, 2008. Pl.'s Mem. at 10. The Commissioner responds that the ALJ addressed much of the DLI evidence. Furthermore, the Commissioner argues that the ALJ's failure to consider the post-DLI evidence that Claimant cites was not improper because the evidence "provide[s] almost no new information regarding [Claimant's] medical conditions or the severity of her symptoms." Def.'s Mem. [DE-24] at 14.

A claimant must establish that a disability existed before the expiration of the claimant's insured status. *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005). This principle does not,

11

however, preclude an ALJ from considering medical records or opinions produced subsequent to the DLI. To the contrary, an ALJ may consider such medical records when they may be relevant to prove that a disability existed prior to the DLI. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir.1987) ("[M]edical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding medical evidence after the DLI is only relevant where it relates back to the claimant's limitations prior to the DLI). Nonetheless, a remand is not necessary where the error was harmless. *See, e.g., Abney v. Astrue*, 5:07-394-KKC, 2008 WL 2074011, at *8 n.1 (E.D. Ky. May 13, 2008); *Rankin v. Astrue*, No. 5:07-CV-00087, 2008 WL 892686, at *4 (W.D. Va. Mar. 31, 2008). Here, any error in the ALJ's failure to discuss certain post-DLI medical evidence was harmless.

Claimant alleges she became disabled on August 23, 2006. Claimant met insured status through December 31, 2007, her DLI. In this case, Claimant has supplied numerous medical records dating after December 31, 2007 (R. 286-336, 340-44), and she now contends the ALJ failed to consider some of that evidence which post-dates her DLI. The post-DLI treatment records that the Claimant relies on are from the VA medical center on March 7, 2008, and April 1, 2008. (R. 296-98, 301-03). Claimant does not argue how the evidence she cites supports a finding of disability and how it was error not to consider this evidence, simply that the ALJ committed error. A review of the March 2008 intake primary care notes, including notes by Dr. Soliman, indicates the following: (1) history of present illness includes fibromyalgia, neck pain, cervical spine surgery, lower back pain, lumbar spine surgery, neuropathy, depression, bilateral plantar fasciitis, and bilateral shoulder pain; (2) pain level at 7/10; (3) impression of neuropathy, depression, back pain, and neuropathy; (4)

12

Claimant's responses to depression screening questions indicating a positive screen for depression and point score "suggestive" of moderately severe depression; and (5) referral for psychotherapy evaluation. (R. 301-04). The April 2008 notes, including intake notes by Dr. Britton, indicate the following: (1) active problems of cervical arthritis, neuropathy and depression; (2) pain level at 5/10; and (3) continuation of current medications with request for oxycodone with Tylenol for pain. (R. 296-98).

Claimant briefly takes issues with the ALJ's statement during the administrative hearing where the ALJ stated, "I am bound to consider only the evidence that you submitted before [December 31, 2007]." Pl.'s Mem. at 10; (R. 35). While the ALJ's statement may be error because post-DLI evidence is not automatically barred from consideration, her written opinion indicates she in fact considered medical evidence beyond Claimant's insured status and did not summarily reject such medical evidence just because it post-dates Claimant's DLI. (R. 24-25). Therefore, the court rejects any argument as to the ALJ's statement during the administrative hearing.

Considering Claimant's argument and the ALJ's opinion, the court finds that any failure to consider the above treatment notes is harmless error. First, none of the medical practitioners examining Claimant in March and April 2008 were treating Claimant during the relevant time. The VA medical center did not begin treatment of Claimant until March 2008, after the date last insured, and the treatment notes only relation back to Claimant's condition before the DLI stems from Claimant's own reporting of her alleged impairments and medical history. *See Abney*, 2008 WL 2074011, at *7 (finding that none of the post-DLI records relate to the claimant's limitations prior to the DLI because none of the individuals saw claimant until years after the DLI and a recitation of a claimant's report of her medical condition does not serve to relate the condition back to an earlier

date). Further, these medical records do not provide information relevant to the disability determination because they are largely intake examinations for the purpose of establishing Claimant as a patient at the VA medical center and are not based on any diagnostic tests or other objective testing. The records contain diagnoses reflecting Claimant's complaints and ailments pre-DLI, but do not provide any information useful in determining the severity of Claimant's condition before December 31, 2007. (R. 218) (January 2005 note diagnosing depression and plantar fasciitis and reporting pain of level 6); (R. 239-40) (August 2007 note diagnosing neuropathy, adjustment disorder with depressed mood, and fibromyalgia, assigning a GAF score of 64, and reporting pain of level 7). *See Higgs*, 880 F.2d at 863 ("The mere diagnosis . . ., of course, says nothing about the severity of the condition."); *Fields v. Astrue*, No. 5:10-CV-463-FL, 2011 WL 6019902, at *8 (E.D.N.C. Nov. 3, 2011) ("[T]he diagnosis of a condition is not enough to prove disability; '[t]here must be a showing of related functional loss.'") (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)), *adopted by*, 2011 WL 6019951 (E.D.N.C. Dec. 2, 2011).

Additionally, the ALJ clearly cited and considered other post-DLI evidence which included a mental evaluation in March 2008, assessing Claimant a GAF score of 70, and Dr. Britton's medical opinion dated February 2010, which the ALJ discounted because the opinion was not supported by his treatment notes, indicating she considered other post-DLI evidence not explicitly cited in the opinion. *See Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered."). Accordingly, any error in the ALJ's failure to discuss all of the post-DLI evidence was harmless, and

14

the court rejects Claimant's argument.

## III. The ALJ's Evaluation of the Medical Opinion Evidence

Claimant contends the ALJ failed to properly evaluate the medical opinion evidence. Specifically, Claimant argues the ALJ erred by giving significant weight to the state agency medical consultant opinions and only little weight to Dr. Caughey's and Dr. Britton's opinions. Pl.'s Mem. at 11-12.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2)

15

the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[3] *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), she must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. § 404.1527(f)(2)(ii). The ALJ must explain the weight given to these opinions in her decision. *Id.*; *see also* SSR 96-6p, 1996 WL 374180, at *1.

Dr. Caughey examined Claimant on July 31, 2007 as a DDS consulting physician and opined that Claimant could not be gainfully employed. (R. 229). The ALJ gave this opinion little weight because Dr. Caughey's opinion was based on Claimant's own report of her work abilities and her opinion that she would not be hired, not objective medical evidence. (R. 25). Before assigning a weight to Dr. Caughey's opinion, the ALJ discussed the findings of Dr. Caughey's examination report, noting the following:

> A consultative examination was conducted in July 2007. The claimant reported pain in her neck and back. On examination it was noted that the claimant's posture was normal and her gait was good. She was able to heel and toe walk, but could not squat

---

[3] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(e).

16

> and rise. Grip strength was 5/5 bilaterally. She was able to handle objects, button clothes, turn a doorknob, and reach. X-rays of the lumbosacral spine were negative. The doctor noted that the claimant was able to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. The doctor noted that the claimant was moderately impaired in her ability to sit, stand, lift, carry and travel (Exhibit 4F).

(R. 24). This summary of Dr. Caughey's findings clearly indicates the basis of the ALJ's decision to assign little weight to this opinion. In addition to the ALJ's summary of Dr. Caughey's report, the court notes that the X-rays reviewed of the lumbar and cervical spine generally indicated "excellent maintenance of the intervertebral disk." (R. 231). Dr. Caughey's own findings within the report do not support the limitations he suggests and the ALJ did not err by reasoning that Dr. Caughey's opinion was largely based on the Claimant's own assessment of her ability to sustain work. Claimant points out that Dr. Caughey's report notes a reduced range of motion in the cervical and lumbar spine. (R. 234). While this is accurate, it was still appropriate for the ALJ to discount the opinion considering the totality of the report findings, specifically that Claimant was no more than moderately limited in a given category. (R. 233). *See Mastro*, 270 F.3d at 176 (noting that the court's duty is to determine if substantial evidence supports the ALJ's conclusions, not to re-weigh conflicting evidence). Moreover, any reliance by Dr. Caughey on Claimant's speculation as to an employer's willingness to hire her is misplaced because that information is wholly unrelated to Claimant's functional limitations or ability to perform a job. Dr. Caughey was to examine and evaluate Claimant's functional abilities, not speculate as to the job market. Here, the ALJ considered the entire report compiled by Dr. Caughey and did not err in discounting the opinion for the stated reasons.[4] Moreover, a determination of whether a claimant is disabled is reserved for the

---

[4] Claimant's contention that the ALJ should have compared Dr. Caughey's 2007 report with his earlier 2003 report is of no merit. There is no requirement that the ALJ make comparisons of reports and the ALJ appropriately considered

17

Commissioner. 20 C.F.R. § 404.1527(d).

Claimant also contends the ALJ erred by giving little weight to Dr. Britton's opinion. Pl.'s Mem. at 12. While the Commissioner responds that this argument is waived because Claimant has asserted this argument in one sentence without providing a developed argument, the court will nevertheless address this contention. Def.'s Mem. at 18. In a February 2010 questionnaire, Dr. Britton opined that Claimant could sit for 0-1 hours, stand/walk for 0-1 hours, would require constant movement, is incapable of low stress work, and cannot perform a full time competitive job. (R. 322-28). The ALJ gave this opinion little weight and reasoned that the opinion is not supported by Dr. Britton's own treatment notes or other evidence, and is based on a limited number of visits, all occurring after Claimant's DLI. (R. 25). The only treatment notes from Dr. Britton appearing in the record are from April 2008 (R. 297-98) and August 2008 (R. 291-92). The ALJ appropriately discounted the opinion based on the infrequency of treatment and timing of treatment. However, the ALJ did not rely solely on the timing of the evaluations in discounting the value of the opinion, but also weighed it against other evidence of record from the relevant time period. *See Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *4 (E.D.N.C. June 4, 2013) (finding harmless error in ALJ's analysis of medical opinions where the "opinion regarding plaintiff's limitations in 2006 is not consistent with substantial evidence in the record pertaining to the time period of alleged disability supporting the ALJ's RFC determination . . . ."). A review of the treatment notes indicates that the limitations in the opinion are not borne out by the Dr. Britton's notes. Accordingly, the ALJ did not err in discounting Dr. Britton's opinion.

Finally, Claimant contends the ALJ erred in assigning significant weight to the opinions of

---

the 2007 report.

the state agency medical consultants who determined Claimant was capable of performing a wide range of sedentary work. Pl.'s Mem. at 11; (R. 25, 241-48, 267). Claimant specifically contends the ALJ's weight assignment was erroneous because the state agency consultants "did not even have all the evidence that was eventually made part of the administrative record," particularly the VA medical records dated in early 2008. Pl.'s Mem. at 11. Claimant's contention that these opinions ought be afforded less weight because the VA treatment notes from early 2008 notes were not available for review at the time of these state agency opinions is unavailing because this court has already found that the VA records do not provide any information useful in determining the severity of Claimant's condition before December 31, 2007. *See supra* section V.2. Additionally, the court has also found that any failure by the ALJ to develop the record was harmless as there is no indication that additional evidence would have influenced the ALJ's disability determination. *See supra* section V.1. The records cited by Claimant that were not reviewed by the state agency consultants at the time of their opinions do not contradict the state agency medical opinions regarding Claimant's physical work ability, in that they fail to demonstrate how Claimant's physical impairments limit her ability to work in greater degree. Accordingly, the ALJ did not err in evaluating the state agency consultant opinions.

In sum, the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence and Claimant's argument is without merit.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be GRANTED and the final decision of the Commissioner be UPHELD.

19

Case 7:12-cv-00324-FL   Document 26   Filed 02/25/14   Page 19 of 20

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 25th day of February 2014.

                                              Robert B. Jones, Jr.
                                              United States Magistrate Judge